IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-CV-183-GCM

| | |
|---|---|
| HARTFORD CASUALTY<br>INSURANCE COMPANY,<br><br>PLAINTIFF,<br><br>v.<br><br>TED A. GREVE & ASSOCIATES,<br>P.A. and TED A. GREVE,<br><br>DEFENDANTS. | **DEFENDANTS' BRIEF IN OPPOSITION<br>TO PLAINTIFF'S MOTION FOR<br>JUDGMENT ON THE PLEADINGS** |

COME NOW the defendants, Ted A. Greve & Associates, P.A. and Ted A. Greve (collectively referred to herein as "Greve defendants"), and submit the following brief in opposition to plaintiff's Motion for Judgment on the Pleadings.

## STANDARD OF REVIEW

Rule 12(c) provides that "after the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." U.S. v. Heggins, 240 F. Supp. 3d 399, 404 (W.D.N.C. 2017). When ruling on a Motion for Judgment on the Pleadings, the trial court "is to consider only the pleadings and any attached exhibits." Eagle Nation v. Market Force, Inc., 180 F. Supp. 2d 752 (2001) (citing Cash v. State Farm, 137 N.C. App. 192, 202, 528 S.E.2d 372, 378 (2000). "In resolving a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view the facts in the light most favorable to the nonmoving party." Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004). The court, however, need not "accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Judgment on the pleadings only should be allowed "if the movant is entitled to judgment as a matter of law." Id.

# ALLEGATIONS IN THE PLEADINGS

This Declaratory Judgment was instituted by the Greve defendants' insurance carrier, Hartford, who requested that this Court find that: (1) it has no duty to defend and (2) that it has no duty to indemnify the Greve defendants with respect to two underlying actions pending in the U.S. Middle District of North Carolina entitled <u>Garey et al. v. Ted Greve & Assoc. et al.</u>, Case No. 1:16-cv-542 and <u>Hatch et al. v. Ted Greve & Assoc. et al.</u>, Case No. 1:16-cv-925 (hereinafter collectively referred to as "the Underlying Cases."). (Complaint ¶¶ 10-12; ¶¶ 78-79).

At all times relevant to this motion, the plaintiff insured the Greve defendants, pursuant to a Business Liability Policy (hereinafter referred to as "the Policy." (Complaint ¶¶ 19-20). Relevant portions of the Policy include the following language:

> **Total Annual Premium: $3,320**

(Complaint, Ex. 1, Form SS 00 02 12 06, p.1).

> **Liability and Medical Expenses Limits of Insurance: $2,000,000**

(Complaint, Ex. 1, Form SS 00 02 12 06, p.1).

> **Personal and Advertising Injury Limits of Insurance: $2,000,000**

(Complaint, Ex.1, Form SS 00 02 12 06, p.7).

> **BUSINESS LIABILITY COVERAGE FORM**
> **A.   Coverages**
> **1.   BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**
> **Insuring Agreement**
> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this coverage applies...
> ...
> b.   This insurance applies:
> (1)   To "bodily injury" and "property damage" only if:
> (a)   The "bodily injury"...is caused by an "occurrence"

>             ...
>        **(2)    To "personal and advertising injury" caused by an offense arising out of your business...**

(Complaint, Ex. 1, form SS 00 08 04 05, p.1).

>    **G.    LIABILITY AND MEDICAL EXPENSES DEFINITIONS**
>        ...
>        **5.    "Bodily injury" means physical:**
>            **a.    Injury;**
>            **b.    Sickness; or**
>            **c.    Disease**
>        **sustained by a person and, if arising out of the above, mental anguish or death at any time.**
>
>        **16.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**
>
>        **17.    "Personal and advertising injury" means <u>injury</u>, including consequential "bodily injury," arising out of one or more of the following offenses:**
>        ...
>            **e.    Oral, written or electronic publication of material that violates a person's right of privacy.**
>
>        **20.    "Property Damage" means:**
>            **a.    Physical injury to tangible property, including all resulting loss of use of that property...**
>            **b.    Loss of use of tangible property that is not physically injured...**

(Complaint, Ex. 1, Form SS 00 08 04 05, pp.22-23).

Important to note is that the Policy does **not** define the terms "accident" or "injury."

The only Exclusions cited by the plaintiff in its Brief in Support of its Motion for Judgment on the Pleadings are as follows:

>    **B.    EXCLUSIONS**
>        **1.    Applicable to Business Liability Coverage**
>            **This insurance does not apply to:**
>            **p.    Personal and Advertising Injury**
>                **"Personal and Advertising Injury"**
>                **...**

- 3 -

> **(11)  Arising out of the violation of a person's right of privacy created by any state or federal act.
> However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.**
>
> ...
>
> **t.  Violation of Statutes That Govern...Other Methods of Sending Material or Information**
> **..."personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:**
>
> ...
>
> **(3)  Any statute, ordinance or regulation...that prohibits or limits the sending, transmitting, communicating or distribution of material or information.**

(Complaint, Ex. 1, Form SS 00 08 04 05, pp.8-9).

The Underlying Cases were attached to the plaintiff's Complaint as Exhibits A & B, and, in relevant portion, read as follows (**NOTE**: both Underlying Cases were virtually identical in their pleadings):

> **Defendant...Greve...regularly markets its services...** (Ex. A, ¶ 25)
>
> **Within a few days of the (plaintiff's) accident...the Greve Defendants...obtained a copy of the DMV-349 for the...accident.** (Ex. A, ¶ 64)
>
> **...said redport contained plaintiff(s)...name and address...defendant obtained the DMV-349s...for the purpose of marketing that defendant's legal services.** (Ex. A, ¶¶ 69-70.
>
> **Each Defendant knew that the DMV-349 forms...contained personal information** (Ex. A, ¶ 71).
>
> **...the Greve defendants...used the protected personal information of plaintiffs... including their names and addresses, by addressing marketing materials to the address of plaintiff...and mailing said materials.** (Ex. A, ¶ 73).
>
> **When...defendant sent its above-described mailing containing the words "This is an advertisement for legal services" to...Plaintiffs, Defendants knowingly disclosed and used said plaintiff's personal information from a motor vehicle record.** (Ex. A, ¶ 143).

> **Defendants knowingly obtained, disclosed and used Plaintiffs' personal information from a motor vehicle record for the purpose of marketing legal services**. (Ex. A, ¶ 144).
>
> **Defendants knowingly obtained, disclosed and used Plaintiffs' personal information from a motor vehicle in violation of the DPPA.** (Ex. A, ¶ 146).
>
> **Said disclosures were made, at a minimum, to employees of the postal or delivery service that delivered each mailing, as well as to defendants' office staff or contractors who participate in addressing and sending the mailings.** (Ex. A, ¶ 126).
>
> **As a proximate result of Defendants' unlawful conduct...each plaintiff...sustained actual damages in having to retrieve the mailings address to them from a delivery person, from is or her entryway or mail receptacle or by having his or her privacy invaded by disclosure of his or her name or address in connection with a potential need for legal services.** (Ex. A, ¶ 127).
>
> **As a proximate result of Defendants' unlawful conduct...each plaintiff...sustained actual damages by having his or her privacy invaded by defendants' obtaining his or her name and address in violation of law and in having his or her information obtained, disclosed and used for marketing purposes without his or her consent.** (Ex. A, ¶ 128).

## ARGUMENTS

### A.   Duty to Defend - Standard

An insurance policy is a contract, and unless overridden by statute, its provisions govern the rights and duties of the parties thereto. <u>Brown v. Lumbermens Mut. Casualty Co.</u>, 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990). As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued. <u>Woods v. Insurance Co.</u>, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). The Court should interpret an insurance policy's plain and unambiguous language "without rewriting the contract or disregarding the express language used." <u>Fidelity Bankers Life Ins. Co. v. Dortch</u>, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986).

When considering whether terms of an insurance policy create the duty to defend, the

- 5 -

Court may compare the pleadings to the terms of the policy, which is known in this State as "the comparison test." Washington Housing Authority v. N.C. Housing Authorities Risk Retention Pool, 130 N.C. App. 279, 502 S.E.2d 626 (1998) (citing Waste Mgt. of Carolinas, Inc. v. Peerless, 72 N.C. App. 80, 84, 323 S.E.2d 726, 730 (1984), reversed on other grounds, 315 N.C. 688, 340 S.E.2d 374 (1986)(Waste Management I)). See also Durham City Bd. of Educ. v. National Union Fire Ins. Co., 109 N.C. App. 152, 426 S.E.2d 451 (1993). "When the pleadings state facts demonstrating that the alleged injury is covered under the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Management of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). After analyzing the insurance policy, "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." Id. at 693, 340 S.E.2d at 378. When assessing an insurer's duty to defend, the ultimate focus should be **on the *facts pled* and not how the claims are characterized**. State Auto v. Travelers, 343 F.3d 249 (4th Cir. 2003) (emphasis added). Essentially the allegations contained in the Underlying Cases should be held up and compared to the language in the Policy to see if there is a duty to defend or indemnify.

**I.  The plaintiff's Rule 12(c) motion should be denied because when the facts pled in the Underlying Cases are taken in the light most favorable to the Greve defendants, the plaintiff has a duty to defend and indemnify the Greve defendants**.

**A.  The Underlying Cases state a cause of action in common law invasion of privacy.**

In the case at hand, the plaintiff contends that it has no duty to defend because the Underlying Cases "make no claim for damages under NC common law and he facts alleged would not give rise to a claim for relief under NC law" and that the above two policy exclusions

- 6 -

"operate to entirely foreclose coverage for the Underlying Actions" because the exclusions bar coverage for claims "arising out of violation of a privacy right created by federal law...(and)...arising out the violation of a statute which restricts distribution of material or information." However, plaintiff's interpretation of the "facts pled" in the Underlying Cases is simply incorrect, as paragraphs 127 and 128 in the Complaint in the Underlying Cases allege facts that support a cause of action for common law invasion of privacy.

The plaintiff also contends in its brief that **all** damages pled by the plaintiff arise out of violation of the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* and therefore are barred by exclusion p(11). However, this, again, is a mischaracterization of the "facts pled" in the Underlying Cases, which support a cause of action for invasion of privacy. In North Carolina, both in federal and state court, a plaintiff is only required to give notice to the defendant of the causes of action sought against him. "The pleading requirements under the federal rules and relevant cases require a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant adequate notice of the nature of the claims against him." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009); See also F.R.C.P. 8(a), 9(h). A Complaint must allege "**facts sufficient to *plausibly* allege a claim for relief, but need not assign a legal theory**." Johnston v. City of Shelby, 135 S. Ct. 346 (2014) (emphasis added). A plaintiff need not plead a specific legal theory, so long as the **facts alleged** give the defendant notice of the cause of action against the defendant. Vandermeer v. M/V Charazz Ex-Sip'N' Time, 2017 U.S. Dist. LEXIS 156203 (E.D.N.C. September 25, 2017) (emphasis added).

The Underlying cases plead that the Greve defendants used plaintiffs' protected, personal and private information to solicit business and that the defendant's conduct resulted in plaintiffs

- 7 -

"having his or her privacy invaded." (Ex. A, ¶¶ 127-28). "The tort of invasion of privacy by intrusion into seclusion has been recognized in North Carolina and is defined as the intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns...where the intrusion would be highly offensive to a reasonable person." Toomer v. Garrett, 155 N.C. App. 462, 479, 574 S.E.2d 76, 90 (2002) (quoting Miller v. Brooks, 123 N.C. App. 20, 26-27, 472 S.E.2d 350, 354 (1996)). An aggrieved party is entitled to at least nominal damages where there has been invasion of privacy. Hall v. Post, 85 N.C. App. 610 (1987) *rev'd on other grounds by* 323 N.C. 259, 372 S.E.2d 711. Essentially, the Underlying Cases allege that the Greve defendants used personal, protected private information, disseminated it to a third parties and then utilized this protected information to advertise. The facts pled in the Underlying Cases, which are attached to the Complaint for Declaratory Judgment and thus incorporated into it, are sufficient to support a cause of action for invasion of privacy.

In performing a "Comparison Test" of the pleadings to the Policy, the common law tort of invasion of privacy is covered under the policy. Exclusion p(11) excludes coverage for invasion of privacy created by state or federal law, however specifically gives the coverage back by stating "**this exclusion does not apply to liability for damages that the insured would have in the absence of state or federal act**." (Complaint, Ex. 1, Form SS 00 08 04 05, p.9). Since the plaintiffs in the Underlying Cases have pled a cause of action in invasion of privacy, an independent and recognized cause of action (regardless of the viability of the claim, it has been pled), and the Greve defendants would purportedly have "liability for damages" for this cause of action "in the absence of state or federal act," defendant Greve has met its burden of showing that the facts pled in the Underlying Cases fall within the scope of coverage contemplated by the

Policy. "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend whether or not the insured is ultimately liable." Wast Mg.t of Carolinas, Inc. V. Peerless Ins. Co., 315 N.C. 688, 690, 340 S.E.2d 374, 377 (1986). "An insurer has a duty to defend when the pleadings allege facts that impose upon an insured a liability covered under the policy." Fireman's Ins. V. Glenn-Tree Investments, 2012 U.S. Dist. LEXIS 134064, 2012 WL 4191383 (E.D.N.C. 2012). Because the Underlying Cases plead facts demonstrating that the alleged injury is covered under the Policy, the plaintiff has a duty to defend in the Underlying Cases.

    **B.    Plaintiff's argument that the invasion of privacy claim does not exist under the present facts is incorrect.**

Again, the test on a Rule 12(c) motion is whether the facts **alleged**, accepted as true and taken in the light most favorable to the non-moving party, warrant the moving party's motion, which in this case, is to find no coverage and therefore, no duty to defend. This is not a summary judgment motion and should not be a test of the viability of a claim asserted in the Underlying Cases.

The plaintiff concedes in its brief that "(w)hile North Carolina does recognize a claim for intrusion upon exclusion, this tort cannot be based on the use of public records." (Brief p.12). However, when the facts alleged in the Underlying Case (which is attached to the plaintiff's Complaint and is therefore a part of its pleading) are taken as true, the information obtained by the Greve defendants was not alleged to be a public record, but was actually "protected personal information" (Ex. A, ¶ 73) obtained from a motor vehicle record (Ex. A, ¶ 125). The word "public record" is not used once in the allegations contained in the Underlying Cases and,

- 9 -

therefore this Court may not look outside the pleadings to determine whether or not the Underlying Cases state a cause of action in invasion of privacy.

Further, the plaintiff's reliance on the <u>Broughton</u> and <u>Tillet</u> cases is misplaced. <u>Tillet</u> involved a plaintiff attempting to bring an invasion of privacy case against a hospital for its employees publishing autopsy photos of a family member. The case failed because N.C.G.S. § 130A-389.1, cited in the opinion, specifically states that a family member has no privacy interest in a loved one's autopsy photographs and that anyone in the public can view said photographs, provided they comply with the parameters of the statute. The <u>Broughton</u> case is likewise distinguishable, as the Court found no cause of action where the defendant newspaper wrote about the plaintiff after searching public Court documents, which were accessible by anyone in the general public by his local courthouse. "There can be no cause for invasion of privacy claim based upon the use of public records as to where plaintiff had no expectation of privacy." <u>Broughton v. Mclatchy Newpapers</u>, 588 S.E.2d 20 (citing <u>Burgess v. Busby</u>, 142 N.C. App. 393, 406, 544 S.E.2d 4, 11). Here, there has been no allegation that the Greve defendants consulted public records to obtain information to solicit advertisements; quite the contrary, the allegations are that the Greve defendants obtained contact information for the claimants by using "protected personal information." As such, plaintiff's public record argument fails.

Further, the plaintiff cites to argument contained in the Greve defendants' brief in the Underlying Cases as proof that the Greve defendants concede that there is no independent cause of action for invasion of privacy. Plaintiff's argument is irrelevant and improper, and should be stricken from its brief, as this Court is to only consider the pleadings in the present case in ruling on a Rule 12(c) motion and **not** arguments contained in a brief in a separate lawsuit.

- 10 -

Notwithstanding the fact that plaintiff's argument is improper and not grounded in law, North Carolina has recognized that "it is clear that argument of counsel is not evidence" in a case, and likewise argument in another case should not be considered part of any pleading in this case. Huss v. Huss, 31 N.C. App. 463, 466, 230 S.E.2d 159, 161 (1976). As such, this Court should disregard plaintiff's entire argument that incorporates any part of the Greve defendants' brief in the Underlying Cases, as it is **not** part of the pleadings that should be properly considered for a Motion for Judgment on the Pleadings.

Finally, plaintiff's reliance on Exclusion t - "Violation of Statutes That Govern...Other Methods of Sending Material or Information" is likewise misplaced. The exclusion precludes coverage for injury "arising out of any action...that...is alleged to violate...any statute...that prohibits or limits the sending...of material or information." The DPPA does not prohibit the "sending" of material or information. Rather, it prohibits the "release" of certain private consumer information. 18 U.S.C. § 2721(a). As such, and because the plaintiffs in the Underlying Cases have stated an independent cause of action for invasion of privacy pursuant to notice pleading, the plaintiffs' Rule 12(c) motion should be denied.

**C.  Because the Underlying Cases include an independent common law claim of invasion of privacy and intrusion into seclusion, plaintiff has a duty to defend the Greve defendants in the Underlying Cases.**

The claim for invasion of privacy asserted in the Underlying case falls squarely within the definition of "personal and advertising injury," which is defined by the Policy as "injury...arising out of...written publication of material that violates a person's right to privacy" and Hartford agreed to pay damages "caused by an offense arising out of your business." This case is factually similar to the case of Prime TV, LLC v. Travelers Ins. Co., 223 F. Supp. 2d 744

- 11 -

(M.D.N.C. 2002).  Prime TV sold DirectTV services and was contacted by a vendor who claimed to have names and fax numbers of citizens in Prime TV's area for sale, and offered to send faxes to these citizens for a fee.  When Prime TV was sued for invasion of privacy, its carrier, Travelers, refused to defend and indemnify it.  The Middle District held that the allegation of a violation of privacy in the underlying cause of action was enough to trigger a duty to defend because "(a)n insurer's duty to defend is broader than its obligation to indemnify the insured."  Id., citing Waste Mgt., 315 N.C. at 691, 340 S.E.2d at 377.  "(W)here the allegations are arguably within the coverage of the policy, there is a corresponding duty to defend...pleadings that disclose a mere *possibility* that the insured is liable (and that potential liability is covered) suffice to impose a duty to defend upon the insurer."  Id.  (Emphasis Added).

Similar to Prime TV, the Greve defendants are alleged to have contacted prospective clients by using private information to send out written solicitations for business, thus allegedly invading citizens' privacy, a separate common law tort, which was pled in the Underlying Cases.  Because there is more than a "mere possibility" that the allegations in the Underlying Cases are covered, Hartford owes a duty to defend its insureds, the Greve defendants.

**II.    The plaintiff's Rule 12(c) motion should be denied because, notwithstanding the exclusions, the plaintiffs still owe a duty to indemnify and defend the Greve defendants in the Underlying Cases because the claims alleged constitute bodily injury or property damage or, in the alternative, are ambiguous..**

In the present case, Hartford charged its insureds, the Greve defendants, over $3,000 to insure it against, among other things, "bodily injury," "property damage" and "personal and advertising injury."  Yet the plaintiff, both in its brief and in its Complaint for Declaratory Judgment, claims that because all causes of action in the Underlying Cases arise out of a

- 12 -

violation of 18 U.S.C. § 2721 (the DPPA), then there is no coverage under the Policy for personal and advertising injury.  Notwithstanding the fact that a separate cause of action has been alleged for invasion of privacy and therefore should be covered under Personal and Advertising Injury, there **is** coverage for DPPA claims asserted in the Underlying Cases under "bodily injury" Business Liability Coverage of the Policy, which does **not** contain the same exclusions as the "personal and advertising injury" coverage.

To understand why there is coverage under the bodily injury liability coverage portion of the Policy, one must look to the legislative intent of the DPPA.  The DPPA, which became law in 1997, regulates the disclosure of personal information in motor vehicle records.  Legislative history illustrates that Senator Barbara Boxer (D-California) introduced the DPPA "to protect the personal privacy and safety of licensed drivers consistent with the legitimate needs of business and government," (139 Cong. Rec. S15, 761 (1993) (Boxer), after one of her constituents, an actress, was murdered after a stalker obtained her home address through motor vehicle records.  The DPPA was to serve as "a critical balance between the legitimate governmental and business needs for this information, and the fundamental right of our people for privacy and safety."  (139 Cong. Rec. S15, 763 (1993).  As Senator Warner explained on October 26, 1993, in support of the DPPA, "both personal privacy and personal safety are disappearing and this legislation would help to protect both."  139 Cong. Rec. (Bound) - vol. 139, Pt. 18.  Senator Moran likewise explained the purpose of the DPPA as follows:

> **Ms. Schaeffer was shot to death by an obsessed fan who obtained her name and address through the DMV.  In Iowa, a gang of thieves copied down the license plate numbers of expensive cars they saw, found out the names and addresses of the owners and robbed their homes at night.**

- 13 -

Because the purpose of the DPPA was to prevent both loss of property and physical injury to citizens, the allegations contained regarding violations of the DPPA fall squarely within the definitions of "bodily injury" and "property damage" contained in the Policy. The Underlying Cases plead that those plaintiffs suffered "actual damages...as a proximate result of defendants' unlawful conduct." (Ex. A. ¶ 149). A case similar to the one at hand is, again, the Prime TV, LLC v. Travelers Ins. Co., 223 F. Supp. 2d 744 (M.D.N.C. 2002). In the Prime TV case, Travelers had likewise moved for judgment on the pleadings. However, the Court found coverage not only under the personal and advertising injury portion of the policy, but also under the property damage portion of the policy, where the insured was alleged to have violated the Telephone Consumer Protection Act (TCPA) by sending faxed advertisements to consumers who were not present customers. In so holding, the Court looked at the legislative history of the statute, which cited costs associated with a consumer receiving facsimiles (paper, ink and cost-shifting of the actual advertisement to the consumer) and found that the consumers loss of use of their fax machines constituted "property damage" under the Policy. See 112 F. Supp. 744, 750.

Further, despite the insurance carrier arguing that faxing advertisements did not constitute an "occurrence" under the policy, but rather an intentional act, the Court found otherwise when applying the Comparison Test between the pleadings and the insurance policy:

> **The intent component of the "occurrence" analysis requires a subjective inquiry...Whether events are accidental and constitute an occurrence depends upon whether they were expected or intended from the point of view of the insured...Where insurance policies fail to define "accident"..the North Carolina Supreme Court has defined it as 'an event that takes place without one's foresigth or expectation; and undesigned, sudden and unexpected event; chance; contingency...where the term accident is not specifically defined in an insurance policy, that term does include injury resulting from**

- 14 -

> **an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act.**

112 F. Supp. 744, 750-51 (citations omitted).

Similarly, the Greve defendants are alleged to have obtained private, personal, protected information from motor vehicles and used said information to solicit advertisements for business to people involved in accidents. The damages the plaintiffs complain of in the Underlying Cases was contemplated by the drafters and sponsors of the DPPA, that is, privacy and personal safety, which fit squarely under the definitions of "bodily injury" and "property damage" in the Policy. The Underlying Cases plead "actual damages." Under a Rule 12(b)(3) standard, reviewing only the pleadings and their exhibits, plaintiff's motion should be denied.

Alternatively, with respect to the exclusions relied upon by the plaintiff for denying coverage, the policy is ambiguous. When an ambiguity arises, the Court must determine if the language of an insurance policy is fairly and reasonably susceptible to either of the constructions that the parties contend to determine if there is in fact an ambiguity. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). In so doing, provisions of an insurance policy are to be construed liberally in favor of the insured, or strictly against the insurer. Beckwith v. American Home Assurance Co., 565 F. Supp. 458, 460 (W.D.N.C. 1983). If the effect of a provision is "uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder." Woods v. Nationwide Mutual Ins. Co., 295 N.C. 500, 504, 246 S.E.2d 774, 777 (1978). The test for construction of the language of an insurance policy contract is "not what the insurer intended the words to mean, but what a reasonable person in the position of the insured

- 15 -

Case 3:17-cv-00183-GCM   Document 20   Filed 10/02/17   Page 15 of 16

would have understood them to mean." Id. at 509, 246 S.E.2d at 779; *citing* Marriott Financial Services Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565 (1975). Moreover, the intention of the insurer is irrelevant when construing ambiguous language of an insurance policy. Marriott Financial Services, Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565. When there is more than one reasonable interpretation of the Policy, the Policy shall be construed in favor of the policyholder. Woods v. Nationwide Mutual Ins. Co., 295 N.C. 500, 504, 246 S.E.2d 774, 777.

In reading the entire policy, the DPPA claims would appear to be covered under the bodily injury and property damage portion of the policy, but possibly taken away by the personal and advertising injury portion of the policy. Because of this ambiguity, the Court should find that there is coverage.

## CONCLUSION

For the foregoing reasons, the Greve defendants respectfully contend that the plaintiff's Motion for Judgment on the Pleadings should be DENIED.

This the 2nd day of October, 2017.

                                    *s/Mark L. Simpson*
                                    Mark L. Simpson
                                    NC State Bar # 23895
                                    Attorney for Defendants

OF COUNSEL:
Ted A. Greve and Associates
1201 North Tryon Street
Charlotte, NC 28206
704-332-2323
Fax: 704-376-9198

- 16 -