| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | ORDER |
| TED A. GREVE & ASSOCIATES, P.A. And TED GREVE, | ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court upon Plaintiff's Motion for Judgment on the Pleadings, filed September 5, 2017. This matter is fully briefed and ripe for disposition.

## I.  FACTUAL BACKGROUND

Plaintiff Hartford Casualty Insurance Company ("Hartford") filed this declaratory judgment action seeking a declaration that it has no duty to defend or indemnify its insured, Defendants Ted A. Greve & Associates and Ted A. Greve (collectively "Greve") in two Underlying Actions, *Hatch, et al. v. DeMayo, et al.*, No. 1:16-cv-925, (the "Hatch Lawsuit"), and *Garey, et al. v. James S. Farrin, P.C., et al.*, No. 1:16-cv-542, (the "Garey Lawsuit"), pursuant to Greve's liability insurance coverage. The two Underlying Actions are putative class actions pending in the Middle District of North Carolina and both assert a single cause of action against Greve (and others) for an alleged violation of the federal Driver's Privacy Protection Act ("DPPA"), based upon Greve's alleged disclosure of information contained in an automobile accident report.[1] (*See* Doc. 1-1 & Doc. 1-2 at p. 3). Underlying plaintiffs seek liquidated

---

[1] Plaintiff has attached the Amended Complaints in the Underlying Actions to its Motion.

damages in the amount of $2,500.00 for each instance in which a defendant knowingly obtained or used a plaintiff's protected personal information.  (Doc. 1-1 & Doc. 1-2 at "Wherefore" clauses).  They also seek an injunction prohibiting the defendants from obtaining or using personal information from motor vehicle records for marketing purposes. (*Id*.). As the complaints disclose, both of these requests are made "pursuant to 18 U.S.C. § 2724 [the DPPA]. . . ." (*Id*.).

The underlying plaintiffs allege that they were involved in automobile accidents. (Doc. 1-1 at ¶¶ 49-54; Doc. 1-2 at ¶¶ 27, 39 & 51). Pursuant to North Carolina law, a law enforcement officer investigated these accidents and then created an accident report. (Doc. 1-1 at ¶¶ 41-48; Doc. 1-2 at ¶¶ 22-26). When creating the report, the investigating officer copied some information from the underlying plaintiffs' drivers' licenses, such as their name and address. (*Id*.). Greve then purportedly obtained these publicly available accident reports and disclosed the allegedly protected personal information from the report (i.e., name and address information) by mailing an advertisement for legal services to the underlying plaintiff-drivers. (Doc. 1-1 at ¶ 70; Doc. 1-2 at ¶ 45). The underlying plaintiffs allege that this invaded their privacy by having their name disclosed in connection with a potential need for legal services. (Doc. 1-1 at ¶¶ 127-28). The underlying plaintiffs seek to represent a class of plaintiffs with respect to alleged violations of the DPPA within the four years prior to the July 8, 2016 filing of the Hatch Lawsuit (Doc. 1-2 at ¶ 71) and within the four years prior to the May 27, 2016 filing of the Garey Lawsuit. (Doc. 1-1 at ¶ 132).

Hartford issued a series of business liability insurance policies (the "Policies")[2] to Greve. The Policies generally provide business liability coverage for "bodily injury," "property damage" and "personal and advertising injury." Greve, however, admits that the Underlying Actions do not allege bodily injury or property damage. (Doc. No. 6, Answer at ¶¶ 34, 36). Accordingly, the Policies' coverage for bodily injury and property damage do not trigger a duty to defend in this action.

With respect to coverage for personal and advertising injury the Policies provide:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

(Doc. No. 17-1 at p. 58; Doc. No. 17-2 at p. 89).

"Personal and advertising injury means:

> injury, including consequential "bodily injury," arising out of one or more of the following offenses:
> . . .
> e.    Oral, written or electronic publication of material that violates a person's right of privacy;
>
> . . .

(Doc. No. 17-1 at pp. 79-80; Doc. No. 17-2 at pp. 110-11).

Personal and advertising injury liability coverage is also subject to the following policy exclusions:

### B.    EXCLUSIONS
#### 1.    Applicable to Business Liability Coverage
This insurance does not apply to:

#### p.  Personal and Advertising Injury
. . .
(11) Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act[.]

---

[2] Plaintiff has attached the applicable Policies to its Motion as Doc. Nos. 17-1 and 17-2.

**t. Violation Of Statutes That Govern E-mails, Fax, Phone Calls Or Other Methods of Sending Material Or Information**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

…

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(Doc. No. 17-1 at pp. 65-66; Doc. No. 17-2 at pp. 95-97).

Hartford filed this lawsuit on April 4, 2017 seeking a declaration that no coverage exists under the Policies for the Underlying Actions. (Doc. 1). Greve filed his Answer on May 25, 2017. (Doc. 6). Hartford moves for judgment on the pleadings that no defense or indemnity are owed in connection with the Underlying Actions.

## II.    DISCUSSION

### A.  Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as a Rule 12(b)(6) motion for failure to state a claim. *See Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). "A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings and any attachments to the pleadings and materials referenced, which are incorporated into the pleadings by Rule 10(c)." *Preston v. Leake*, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009). The "applicable test under Rule 12(c) is whether, 'when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law.'" *Blue Rhino Glob.*

*Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 721 (M.D.N.C. 2012) (citations omitted). As this Court has recognized, a "motion under Rule 12(c) has appropriately been used for resolving declaratory judgment actions involving the construction of insurance policy language or provisions." *Unitrin Auto & Home Ins. Co. v. Siarris*, 2015 WL 457630, at *2 (W.D.N.C. Feb. 3, 2015).

"While the Court generally considers only the allegations of the pleadings in ruling on a Rule 12(c) motion, the Court may consider documents that are 'integral to and explicitly relied on in the complaint,' so long as there is no question as to the documents' authenticity." *In re Versant Properties, LLC*, 2011 WL 1131057, at *3 n.4 (W.D.N.C. Mar. 25, 2011); *see also Massey v. Ojaniit*, 2013 WL 1320404, at *7 (W.D.N.C. Mar. 29, 2013) ("The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings 'so long as they are integral to the complaint and authentic.'" (citations omitted)).

### B. Insurer's Duty to Defend

Under North Carolina law, "[a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings . . . .  When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co*., 340 S.E.2d 374, 377 (N.C. 1986); *see also Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Investments, LLC*, 2012 WL 4191383, at *5 (E.D.N.C. Sept. 19, 2012) ("An insurer has a duty to defend when pleadings allege facts that impose upon an insured a liability covered by the policy."). "Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no

knowledge that the facts are otherwise, then it is not bound to defend." *Waste Mgmt.*, 340 S.E.2d at 377. To decide an insurer's duty to defend, "[North Carolina courts] apply the 'comparison test,' reading the policies and the [underlying] complaint 'side-by-side . . . to determine whether the events as alleged are covered or excluded.'" *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 610 (N.C. 2010) (citations omitted). "[E]ven a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy." *Id.* at 611. "When a dispute arises regarding the duty to defend, the insured must initially show that the asserted facts arguably fall within the policy's coverage. If the insured meets this burden, then the insurer must show that the policy precludes coverage based on an exclusion." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Sharpe Images, Inc.*, 2012 WL 3962747, at *2 (W.D.N.C. Sept. 11, 2012) (citations omitted).

The Court notes that the meaning of language used in an insurance policy is a question of law for the court. *See Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970). "[I]f the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written." *N. Carolina Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000).

### C. Hartford has no duty to defend Greve

A reading of the Amended Complaints in the Underlying actions render it abundantly clear that they seek relief under a federal statute, the DPPA. They seek: (1) a determination that Greve violated the DPPA, and (2) statutory liquidated damages available under the DPPA. There is no claim plead under North Carolina common law and no claim for damages under North Carolina common law. Defendants argue that the

Underlying Actions can be interpreted to support a claim for invasion of privacy by intrusion into seclusion under North Carolina common law.  However, the plain language of the Complaints state otherwise.

Two policy exclusions operate to entirely foreclose coverage for the Underlying Actions.  First, the Statutory Violation Exclusion operates to bar coverage, as it provides that the insurance does not apply to: "'Personal and advertising injury': arising out of the violation of a person's right of privacy created by any state or federal act.  However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act."  Here, the right of privacy at issue in the Underlying Actions is solely a creature of federal law,[3] which defeats coverage under the plain language of this exclusion.

While the exclusion does create an exception for liability for damages that the insured would have in the absence of such state or federal act, once an insurer establishes that an exclusion precludes coverage, the burden shifts to the policyholder to show that an exception to the exclusion exists and applies to restore coverage. *See Home Indem. Co. v. Hoechst Celanese Corp.*, 494 S.E.2d 774, 783 (N.C. Ct. App. 1998). Greve cannot meet his burden to show that this exception applies.  He argues that the North Carolina common law claim of intrusion upon seclusion applies, but the Court finds that this tort cannot be a source of recovery in the Underlying Actions because it cannot be based on

---

[3] The Supreme Court explained:

> Concerned that personal information collected by States in the licensing of motor vehicle drivers was being released—even sold—*with resulting loss of privacy for many persons*, Congress provided federal statutory protection. It enacted the Driver's Privacy Protection Act of 1994, referred to here as the DPPA.

*Maracich v. Spears*, 133 S. Ct. 2191, 2195 (2013) (emphasis added); *see also Collier v. Dickinson*, 477 F.3d 1306, 1309-10 (11th Cir. 2007) (stating "[w]e find that the plain language of *the DPPA clearly, unambiguously, and expressly creates a statutory right* which may be enforced by enabling aggrieved individuals to sue persons who disclose their personal information in violation of the DPPA.") (emphasis added).

the use of public records. *See Broughton v. McClatchy Newspapers, Inc*., 588 S.E.2d 20, 28 (N.C. Ct. App. 2003); *Tillet v. Onslow Mem'l Hosp., Inc*., 715 S.E.2d 538, 541 (N.C. Ct. App. 2011) ("[A] plaintiff cannot successfully pursue an intrusion upon seclusion claim based upon the accessing of items which are either in the public record or required to be made available for public inspection.").  The Court takes judicial notice of fact that North Carolina law provides that an accident report is a public record.[4]

Not only does the Statutory Violation Exclusion operate to eliminate coverage, but a separate exclusion addressing alleged violations of statutes which limit the sending or transmission of information also applies.  This exclusion states:

> This insurance does not apply to:
>
> "Bodily injury," "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
> …
> Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, or communicating or distribution of material or information.

(Doc. No. 17-1 at pp. 65-66; Doc. No. 17-2 at pp. 96-97).

A plain language construction of this exclusion reveals that there is no coverage under the Policies when personal or advertising injury arises from the alleged violation a statute that limits the communication or distribution of material or information. Alleged violations of the DPPA come directly within this scope.  The DPPA states:

> It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

---

[4] N.C. Gen. Stat. §20-166.1(i) provides that "[t]he reports made by law enforcement officers and medical examiners are public records and are open to inspection by the general public at all reasonable times."

18 U.S.C. § 2722. Thus, the statutory language itself shows that the statute creates a limitation on the distribution of certain information.

Because the sole claim in the Underlying Actions does not trigger coverage under the Policies, the Court finds that Hartford has no duty to defend Greve. Moreover, since there is no duty to defend, there is no duty to indemnify. *See Liberty Corp. Capital, Ltd. v. Delta Pi Chapter of Lambda Chi Alpha*, 2012 WL 3308371, at *3 (M.D.N.C. Aug. 13, 2012) ("[I]f there is no duty to defend, there is no duty to indemnify 'because the allegations, even when taken as proved, would fall outside the policy's coverage.'" (citations omitted)).

IT IS THEREFORE ORDERED that Plaintiff's Motion for Judgment on the Pleadings is hereby GRANTED.

Signed: November 17, 2017

Graham C. Mullen
United States District Judge